UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST CIVIL DIVISION

CIVIL ACTION NO.:

EDDIE I. SIERRA,

    Plaintiff,

vs.

CITY OF KEY WEST, FLORIDA

    Defendant.
_____/

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The Plaintiff, EDDIE SIERRA, by and through his undersigned counsel, hereby files his Complaint against CITY OF KEY WEST, Florida for declaratory and injunctive relief, and in support states as follows.

**INTRODUCTION**

1.    Mahatma Gandhi said, "The true measure of any society can be found in how it treats its most vulnerable members." Plaintiff Sierra is deaf. He brings this action to force the City of Key West to end its discriminatory policies and practices and provide him with equal access to its services, programs, and activities. This is an action under Title II of the Americans with Disabilities Act of 1990 and under Section 505 of the Rehabilitation Act of 1973 through which Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") is enforced, to redress unlawful disability-based practices and to make plaintiff Eddie Sierra whole. Defendant CITY OF KEY WEST, Florida ("CITY OF KEY WEST") is a public entity which denied Eddie I. Sierra

1

both access to Defendant's archived video for streaming on demand and access to live streaming[1] of Defendant's City Commission meetings, on the basis of his disability, being hard of hearing and deaf. In so doing, CITY OF KEY WEST denied Eddie I. Sierra a fundamental right to observe and participate in the democratic process of self-government. "The right to meaningful participation in the political process and right of access to publicly available information needed to participate in the process is a fundamental right, and an infringement of the right should receive heightened scrutiny." *See Johnny Reininger, Jr. v. State of Oklahoma,* Case No. 5:16-cv-01241-D (W.D. Okla. November 9, 2017) (DE 40).

2. CITY OF KEY WEST's video and live streaming of online content constitutes "programs, services and activities" that are available to anyone who accesses its website. However, this content is not available for persons who are deaf or hard of hearing due to access barriers, including failure to provide closed captioning. 28 CFR §35.130.

3. Qualified or otherwise qualified individuals who are deaf, require auxiliary aids or services, such as closed captioning services, to meaningfully access the online audiovisual content and audio content. CITY OF KEY WEST's audiovisual content is not closed captioned.

4. Plaintiff brings this action against CITY OF KEY WEST to enforce Section 504 of the Rehabilitation Act which requires that a public entity receiving federal financial assistance, not deny persons with disabilities the benefits of its programs, services and activities. [2] CITY OF KEY WEST's adopted 2017-2018 budget includes federal financial assistance as a revenue source.

5. By failing to provide auxiliary aids or services, CITY OF KEY WEST deprives deaf and hard of hearing individuals the benefits of its online content, a benefit afforded to non-

---

[1] As used herein live streaming means the streaming of a live event, over the internet, as it occurs.
[2] See 29 USC §794(a)

2

disabled individuals, thereby increasing the sense of isolation and stigma that the ADA and Section 504 were meant to redress for individuals with disabilities.

6. Well over a year ago, Plaintiff requested that CITY OF KEY WEST provide auxiliary aids and services—closed captions—for its online content in a timely and accurate fashion. CITY OF KEY WEST has not provided closed captions or any other auxiliary aids or services for its online audiovisual content. In the 17 months since Plaintiff made the request, CITY OF KEY WEST has not answered Plaintiff's request nor closed captioned any of its video content.

7. CITY OF KEY WEST's denial of its publicly available online content to deaf and hard of hearing persons violates Section 504 of the Rehabilitation Act and Title II of the ADA.

8. Accordingly, Plaintiff seeks injunctive and declaratory relief to ensure that deaf and hard of hearing individuals have equal, effective and timely access to CITY OF KEY WEST's publicly available online content, and other damages as pled *infra*.

## JURISDICTION AND VENUE

9. Plaintiff brings this action under sections 12132 and 12133 of the ADA, 42 U.S.C. §§12132 and 12133 incorporating by reference the remedies, procedures and rights under the Rehabilitation Act, 29 U.S.C. §§794 and 794a(a)(2) and (1)(a), and under section 505 of the Rehabilitation Act, which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a(a)(2) incorporating the remedies, rights and procedures set forth in section Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d et. seq.

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. §12188. This Court's jurisdiction is proper under 28 U.S.C. §§ 451, 1331, and 1343.

11. CITY OF KEY WEST's unlawful practices have been occurring since 2013 and

continue to occur in the Southern District of Florida.

12.     Plaintiff is a business person in South Florida.  Plaintiff currently conducts business in Miami-Dade, Broward and Palm Beach Counties and would be interested in pursuing business opportunities in other Florida counties.  He would also consider setting up an office and renting a residential dwelling if his business pursuits were fruitful.  In that regard, he would like to observe how CITY OF KEY WEST government conduct its business; discover information about the City; explore activities and visitor information; and learn about its disability rights policies.  Plaintiff understands that disability rights and accessibility impact every current or future program, service or activity Defendant conducts.  Plaintiff believes that the public disability rights policies inform the basis of other policies. Plaintiff has visited Defendant's website in the past including December 2016, various times in 2017, on April 26, 2018 and April 30, 2018.  He intends to continue to visit Defendant's website in the immediate future.  Defendant's website constitutes a "Program and Activity" under the Rehabilitation Act 29 U.S.C. §794(b)(1)(A).  However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur on Defendant's website, Plaintiff will continue to be denied full and equal access to the video content on Defendant's website, and its live streaming.

13.     Plaintiff is expressly authorized to bring this action under the Americans with Disabilities Act (ADA) 42 U.S.C. Sections 12132 and 12133, incorporating by reference the remedies and procedures and rights under the Rehabilitation Act, 29 U.S.C. Section 794 and 794a(a)(2) and under Section 505 of the Rehabilitation Act which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a(a)(2) incorporating the remedies, rights and procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d et. seq.

14. Plaintiff has complied with all prerequisites to bring this complaint for violation of the ADA and Rehabilitation Act. The Twenty-First Century Communications and Video Accessibility Act (CVAA) is not applicable to this action because Defendant is exempt from the closed captioning requirements under the CVAA. The Federal Communications Commission regulations grant self-implementing exemptions (Defendant is not required to apply for the exemption) from the CVAA closed captioning requirements if a video programming provider has not made more than Three Million Dollars ($3,000,000) from a channel of programming in the previous year. Because Defendant has not received revenue in excess of $3,000,000 from the operation of its government access channel, it is automatically exempt from the CVAA closed captioning requirements. Since Defendant is exempt from the CVAA, it cannot violate the CVAA. As a result, Plaintiff does not have CVAA administrative remedies available at the Federal Communications Commission (FCC) which accepts complaints that allege a violation of the CVAA regulations. *See*, 47 C.F.R. 79.1(g)(1). However, "[W]hen it [FCC] adopted closed captioning mandates for television, the Commission made clear that entities that qualify for an exemption from the FCC's closed captioning requirements may be obligated under other federal statutes, such as the Americans with Disabilities Act (ADA), to make their services and programs, including video programming services accessible to individuals with disabilities. *Closed Captioning and Video Description of Video Programming, Implementation of Section 305 of the Telecommunications Act of 1996, Video Programming Accessibility,* Report and Order 13 FCC Rcd 3272, 3342, n.534 (1997) (1997 Closed Captioning Order). "[T]he Commission's rules and are not intended to 'preclude or supersede the operation of federal laws that may require an entity exempt from the [the FCC's closed captioning requirements] to make its video programming

5

services accessible to people with disabilities." *1997 Closed Captioning Order*, 13 FCC Rcd 3272, 3342, n.534. *See also* 28 CFR Appendix B to part 35, Guidelines of ADA Regulation and Nondiscrimination on the Basis of Disability in State and Local Government Services, 56 FR 35696, 35712 (July 26, 1991) (noting that television and videotape programming produced by public entities is covered under 28 CFR §35.160, and further noting that "[a]ccess to audio portions of such programming may be provided by closed captioning").

## PARTIES

15. Plaintiff is deaf and is substantially limited in the major life activity of hearing. Plaintiff does not understand or use sign language. He has been deaf since he was five years of age.

16. Plaintiff is an otherwise qualified or qualified individual with a disability in that Plaintiff is qualified to access CITY OF KEY WEST's video streaming program or service.

17. Due to his disability, the Plaintiff requires auxiliary aids and services, such as closed captioning services, to be able to participate in and receive the benefit of the CITY OF KEY WEST's online videos and content.

18. CITY OF KEY WEST is one of the most diverse and progressive cities in the United States. Yet, it discriminates against people with hearing disabilities. It is a public entity within the meaning of Title II of the Americans with Disabilities Act and at all times relevant has been a recipient of federal funds under the Rehabilitation Act of 1973. CITY OF KEY WEST is a body corporate and political subdivision of the State of Florida.

## GENERAL ALLEGATIONS

19. CITY OF KEY WEST provides a live streaming service through its online portal where any interested persons can stream the live meetings of the CITY OF KEY WEST COMMISSION. In these simulcast meetings, the CITY OF KEY WEST COMMISSION is receiving information and statements from the public, negotiating and voting on issues concerning procurement, culture, elections, transportation, zoning, taxes, spending, and parks. The decisions made at the City Commission meetings have a direct effect on the citizens in the region. However, CITY OF KEY WEST's live streaming is done in a discriminatory manner because it is not closed captioned.

20. CITY OF KEY WEST also has archived videos on its website ranging from 2013 to present which are linked to this complaint. These videos show the City Commission discussing and voting on transportation concerns, procurement contracts, tax rates, and cultural activities. http://www.cityofkeywest-fl.gov/department/division.php?structureid=236. However, none of this programming is available to persons with hearing disabilities. CITY OF KEY WEST also has videos on its Facebook page from April 2018 to February 2013. https://www.facebook.com/pg/CityofKeyWest/videos/?ref=page_internal. None of these videos are captioned, despite the fact that Facebook has provided tools within the platform to do so.

21. Persons who are not limited in the major life activity of hearing are able to use CITY OF KEY WEST's live streaming and on demand video service to watch and listen to CITY OF KEY WEST's legislative decision-making activities via the live streaming service. They are also able to meaningfully use and benefit from other archived videos from CITY OF KEY WEST.

22. Plaintiff Sierra is prevented from observing and participating in the CITY OF KEY WEST's live streamed meetings or viewing its archived content identified in ¶20 because of his

hearing disability.

23. Plaintiff will return to the CITY OF KEY WEST website in the near future to use its video archives and live-streaming services of future City Commission and other meetings and activities, but for the unlawful barrier created by CITY OF KEY WEST's refusal to provide closed captioning services for its archived videos and live streaming of its City Commission meetings. Thus, Plaintiff has been effectively barred from access to the CITY OF KEY WEST's online video and live streaming content.

24. On or about December 8, 2016 Plaintiff, in his own right and as an advocate for disabled persons, requested Peg Corbett, CITY OF KEY WEST ADA Coordinator to provide auxiliary aids and services including but not limited to closed captioning of videos on its website and closed captioning for its live City Commission meetings. Plaintiff requested closed captioning because he does not use or understand sign language.

25. CITY OF KEY WEST has failed to provide Plaintiff with any of the requested auxiliary aids and services for its live streamed and archived content.

26. Plaintiff has been denied access to Defendant's online videos on numerous occasions as stated in ¶12. Plaintiff was denied access to CITY OF KEY WEST's archived videos identified in ¶20. The archived videos remain inaccessible because they are not closed captioned.

27. CITY OF KEY WEST is a public entity as defined in 42 U.S.C. Section 12131(1) of the ADA, in that it is a local government entity, a body corporate and political subdivision of the State of Florida.

28. As a public entity, Defendant must:

    a) Provide full and equal enjoyment of its services, programs, and activities in

the most integrated setting appropriate to people with disabilities. 42 U.S.C. §12131, *et. seq.*; 28 C.F.R. §35.130(a).

      b)      Ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals unless the public entity can demonstrate that taking those steps to modify policies, practices, or procedures would fundamentally alter the nature of the service, program, or activity; 28 C.F.R. §35.130(b)(7).

      c)      Ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals unless the public entity can demonstrate that legitimate safety requirements are necessary for safe operation. Any safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities; 28 C.F.R. §35.130(h).

29.    At all times relevant, CITY OF KEY WEST has been a recipient of federal financial assistance.

30.    Since at least 2013, CITY OF KEY WEST has engaged in unlawful practices in violation of the ADA Section 12132; 28 C.F.R. 35.130(a)-(b)(1), 28 C.F.R. 35.160(a) and (b)(2) and in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794. These practices include but are not limited to denying Eddie I. Sierra, an individual with a disability who, with or without reasonable modifications to the rules, policies or practices; the removal of communication barriers; or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by CITY OF KEY WEST including access to the on demand and live streaming video services of the CITY OF KEY WEST.

9

32. For its archived video content, identified above in ¶20, CITY OF KEY WEST has acted with deliberate indifference to the provisions of the Rehabilitation Act and Title II of the ADA regarding the unlawful practices described herein because CITY OF KEY WEST received Sierra's request for auxiliary aids, is aware of the availability of auxiliary aids and services and does not provide closed captioning, for its content identified in ¶¶19 and 20, and has failed to provide such auxiliary aids and services upon notice of Plaintiff's request for the same.

33. The international website standards organization, W3C, has published widely-accepted guidelines ("WCAG 2.0 AA") for making video content accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice, the Federal Courts and adopted by the United States Access Board, an independent federal agency that promotes equality for people with disabilities, as the standard for the federal government.

34. CITY OF KEY WEST's online video content as referenced in ¶20 does not comply with the WCAG 2.0 AA guidelines. CITY OF KEY WEST's live streamed City Commission meetings referenced in ¶19 herein also fail to follow WCAG 2.0 AA guidelines for real time closed captioning of video content.

35. Plaintiff has retained J. Courtney Cunningham, PLLC as his legal counsel in this action, and has agreed to pay said law firm reasonable attorneys' fees and costs of litigation.

## COUNT I
## VIOLATION OF TITLE II OF THE ADA

36. Plaintiff adopts the allegations in paragraphs 1 through 35 as if fully set forth herein, and would further state:

37. Defendant's streaming of video content referenced in ¶19, and ¶20 is a service,

program or activity within the definition of Title II of the Americans with Disabilities Act.

38. Plaintiff has visited Defendant's website on different occasions as stated in ¶12. Each time, Plaintiff was denied access to Defendant's video content available on Defendant's website described at ¶20.

39. On December 08, 2016, Plaintiff requested that Defendant provide an auxiliary aid and service for use of its archived video and live streaming of its City Commission meetings.

40. Defendant failed to provide an auxiliary aid and service for Plaintiff after receipt of Plaintiff's request for the same and for the archived videos in ¶20. Plaintiff sent the request to the person named on Defendant's website to receive such requests.

41. Defendant has denied Plaintiff the opportunity to participate in or benefit from the programs, services and activities afforded to persons who are not hearing-impaired. Defendant is required to provide full and equal enjoyment of its services, programs, and activities in the most integrated setting appropriate to people with disabilities. 42 U.S.C. §12131, *et. seq.*; 28 C.F.R. Part 35.

42. Defendant has denied Plaintiff these opportunities due to Plaintiff's disability, i.e. his hearing impairment, being deaf.

43. Defendant denied Plaintiff the opportunity to participate in a service, program, or activity due to Plaintiff's disability, being deaf.

44. Defendant has failed to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied participation in a service, program or activity, segregated or otherwise treated differently than other individuals because of the absence of

auxiliary aids and services. As a public entity and pursuant to Title II, Defendant must also take appropriate steps to ensure that its communications with individuals with disabilities are as effective as communications with others, and furnish the appropriate auxiliary aids and services, such as closed captioning, to afford individuals with disabilities an equal opportunity to participate in, and enjoy the benefits of it services, programs or activities. 28 C.F.R. §§ 35.160 (a)-(b).

45.  Defendant has failed to provide auxiliary aids and services for the video content referenced in ¶20, including but not limited to "qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders*; open and closed captioning, including real-time captioning*; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 35.104 (1) (emphasis supplied)

46.  Defendant has a multimillion dollar yearly budget. Providing closed captions as requested or the auxiliary aids and services as stated in paragraph 45 above would not result in any undue burden to Defendant.

47.  Providing auxiliary aids and services as stated in paragraph 45 would not fundamentally change the nature of the service, program or activity.

12

48. As a public entity and pursuant to Title II, Defendant is required to make reasonable modifications in its policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity; 28 C.F.R. § 35.130(b)(7).

49. As long as Defendant fails to comply with the ADA, its regulations and WCAG 2.0 AA standards, Plaintiff remains unable to equally and fully access the Defendant's video archives as well as live steaming content identified in ¶19, and ¶20.

50. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages.

## COUNT II

## VIOLATION OF THE REHABILITATION ACT OF 1973

51. Plaintiff adopts the allegations in paragraphs 1 through 35 as if fully set forth herein.

52. Plaintiff is expressly authorized to bring this action under the Rehabilitation Act of 1973, 29 U.S.C. Section 794 and 794a(a)(2) and (b)(1)(A), and under Section 505 of the Rehabilitation Act which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a incorporating the remedies, rights and procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et. seq.

53. Defendant's video content identified in ¶ 19 and ¶20, includes CITY OF KEY WEST's live City Commission meetings, and archived City Commission and other videos.  None of the archived video content is closed captioned and he live streaming City Commission meetings are not closed captioned.

54. Congress enacted the Rehabilitation Act of 1973 to enforce the policy of the United States that all program, projects and activities receiving federal assistance "… be carried out in manner consistent with the principles of … inclusion, integrations and full participation of the individuals [with disabilities]." 29 U.S.C. § 701(c)(3).

55. CITY OF KEY WEST is a recipient of federal financial assistance bringing CITY OF KEY WEST under the Rehabilitation Act which prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities".

56. Section 504 of the Rehabilitation Act prohibits recipients of federal funding from discriminating against disabled persons and requires that facilities, programs or activities operated by a federally-funded entity be readily accessible to persons with disabilities. See 28 C.F.R. § 42.520.

56. The Rehabilitation Act defines "program or activity" to mean all of the operations of a department, agency, special purpose district, or other instrumentality of State or local government.  CITY OF KEY WEST is an instrumentality of State or local government. Defendant's publicly available online content and streaming services is a "program or activity" within the meaning of the Rehabilitation Act. 29 U.S.C. Section 794(b)(1)(A).

57. On or about December 8, 2016, Plaintiff requested that CITY OF KEY WEST provide effective communications by granting auxiliary, aids and services--closed captioning of videos on its website--and closed captioning of its live City Commission meetings.

58. CITY OF KEY WEST has failed to provide Plaintiff with the requested auxiliary aids and services.

59. As stated in ¶12, Plaintiff was denied access to CITY OF KEY WEST's archived

video content solely by reason of his disability. This denial of access to Defendants "program or activity" subjected Plaintiff to discrimination, excluded Plaintiff from participation in the program or activity and denied Plaintiff the benefits of Defendants live streamed and archived video streaming service. As of this filing, the video content remains uncaptioned and inaccessible to qualified or otherwise qualified persons.

60. The international website standards organization, W3C, has published widely-accepted guidelines ("WCAG 2.0 AA") for making video content accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice and by Federal Courts and the United States Access Board.

61. CITY OF KEY WEST's live streamed City Commission meetings and archived video recordings do not comply with the WCAG 2.0 AA guidelines because they are not closed captioned.

62. CITY OF KEY WEST has engaged in unlawful practices in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 since 2014. These practices include but are not limited to denying Eddie I. Sierra, an individual with a disability who, with or without reasonable modifications to the rules, policies or practices; the removal of communication barriers; or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by CITY OF KEY WEST.

63. CITY OF KEY WEST has acted with deliberate indifference to the provisions of the Rehabilitation Act and Title II of the ADA in regards to the unlawful practices described herein because CITY OF KEY WEST is aware of the availability of auxiliary aids and services and fails to provide any such services, including but not limited to closed captioning for its content identified

in ¶ 19 and ¶20 and has failed to provide such auxiliary aids and services upon notice of Plaintiff's request for the same.

64. As a direct and proximate result of CITY OF KEY WEST's unlawful discrimination, Plaintiff has sustained injuries and damages and has suffered shame, humiliation, isolation, segregation, experienced emotional suffering, pain and anguish and has been segregated and prohibited from participating and observing CITY OF KEY WEST government.

WHEREFORE the Plaintiff requests relief as set forth below:

A. A Declaratory Judgment finding that, as of the commencement of this action, Defendant was in violation of the specific requirements of Rehabilitation Act and its relevant implementing regulations, in that Defendant took no action that was reasonably calculated to ensure that its video content described herein was fully accessible to, and independently usable by, disabled and hearing-impaired individuals;

B. A permanent injunction pursuant to 42 U.S.C. §12133; 28 CFR §35.160(a)1 and (b)1 and 29 U.S.C. § 794a(a)(2) which directs Defendant to take all steps necessary to bring its video content into full compliance with the requirements set forth in the ADA, and its implementing regulations, and the Rehabilitation Act of 1973, so that its video and live streaming content is fully accessible to, and independently usable by, hearing-disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

C. That Defendant ensure that all employees involved in website video content

development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

D. That Defendant create an accessibility policy that will be posted on its website, along with an e-mail address and toll-free phone number to report accessibility-related problems.

E. Damages to Plaintiff as compensation for violating Plaintiff's rights under the Rehabilitation Act of 1973 and Title II of the ADA.

F. Payment of costs of suit;

G. Payment of reasonable attorneys' fees and costs, pursuant to 29 U.S.C. §794(a)(b) of the Rehabilitation Act; and

H. Any and all other relief this Court deems necessary and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 2nd day of May 2018.

Respectfully Submitted,

*/s/ Juan Courtney Cunningham*
J. Courtney Cunningham, Esq.
J. COURTNEY CUNNINGHAM, PLLC
8950 S.W. 74TH Court, Suite 2201
Miami, FL 33156
T:  305-351-2014
F:  305-513-5942
cc@cunninghampllc.com